**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**UNITED STATES OF AMERICA,**

**vs.**

**Case No. 4:92cr4034-WS
Case. No. 4:09cv394-WS/WCS**

**THOMAS DEWAYNE WHITE,**

    **Defendant.**

_____/

### <u>REPORT AND RECOMMENDATION TO DISMISS § 2255 MOTION</u>

This cause is before the court on a 28 U.S.C. § 2255 motion to vacate, with

supporting memorandum and exhibits.  Docs. 91, 92, and 92-2, respectively.  Defendant

does not set forth any claims on the § 2255 form itself, but references the

memorandum.  Defendant asserts that whether under § 2255 or through the gateway of

actual innocence, this court has jurisdiction to review the merits of his claims.  Doc. 92,

pp. 2-4.

The file is in archives and, due to the age of the case, many of the documents

were never scanned into the electronic docket (ECF).  See doc. 46 (scanned copy of

the paper docket, containing entries for docs. 1-46).  Statements of facts were set forth

in the briefs filed on direct appeal, available in Westlaw.  1993 WL 13127076 (brief of

Appellee United States) and 1993 WL 13127077 (brief of Appellant Defendant). A summary of the charges and offense conduct is also provided in doc. 57 (opposition to Defendant's § 3582(c)(2) motion), and in the presentence report (PSR), ¶ ¶ 1-9.

Defendant was convicted by a jury of armed robbery of a United States Postal Worker and use of a firearm during that offense. James McDaniel was a mail carrier, and while driving his mail truck on November 6, 1991, he was flagged down by a person later identified as Defendant White. The man told McDaniel he was waiting for a check to be delivered and gestured toward a mobile home; McDaniel looked in that direction and when he turned back, the person stuck a gun in his face. McDaniel pushed the gun away and it cut his finger. The man said he would kill him, and hit McDaniel in the face.

According to Defendant's brief on appeal, a motion to suppress identification testimony was made at trial prior to the first witness being called. Appellant's brief, p. 5. McDaniel testified as a proffer. *Id.* McDaniel described the person as "a 20 year old, lean, black male wearing army pants and a green army fatigue jacket." *Id.* (paraphrasing the evidence). *Id.* He said "the black male was a 'clean shaven, nice looking young man, wasn't scroungy, clean shaven kind of bald, no hair on his head.'" *Id.* (quoting the transcript, R2-12). *Id.*

McDaniel said the person reached into the mail truck and turned it off, then the keys fell on the floor. McDaniel refused to hand over the keys and blew the horn to get the attention of the driver in another vehicle. McDaniel said the man told him to leave, and as McDaniel was driving away in the mail truck the man shot him in the leg. McDaniel drove off. A forensic artist met with McDaniel and created a composite drawing of the shooter's face.

Investigation in the neighborhood where the shooting occurred began to focus on Defendant. Some witnesses to the circumstances surrounding the incident were staying in a trailer on 340 East Green Street, near where the shooting occurred. Two people provided lists of who had been staying at the trailer that morning. One did not name Defendant and another did. Officers then found a photo of White and his appearance was similar to the composite drawing. They ultimately found Defendant at the Madison County Jail, where he was being detained for an unrelated shooting on November 9, 1991. Defendant first said he had a girlfriend at the trailer, but had not been in the area for three weeks, then admitted to being in the trailer the day of the shooting. It was arranged for McDaniel to come to the jail to view a line up.

Originally chosen for the line up were three inmates with blue jerseys and three (including Defendant) with orange jerseys. The other two in orange jerseys were deemed security risks and replaced with inmates in blue jerseys, leaving Defendant the only person in the line up wearing an orange jersey. McDaniel said he picked the person with the orange jersey, not because of the jersey but because he looked like the guy who held the gun to his face and who shot him. He identified Defendant in the courtroom.

In addition to McDaniel's identification testimony, the Government introduced testimony of investigating officers, of people who had seen Defendant with a gun in the trailer near the shooting, and an inmate in Massachusetts[1] who testified that Defendant told him he shot the postal carrier in the leg.

---

[1] Defendant had been returned to custody in Massachusetts for violation of parole.

Defendant was sentenced to 200 months and 60 months, to be served consecutively.  The judgment was affirmed on March 22, 1994, and the mandate issued on April 25, 1994.  Doc. 53.  In January of 1996, Defendant filed a motion for jury instruction transcripts, claiming he was indigent and needed the transcripts to prepare a § 2255 motion.  Doc. 54.   By order docketed January 26, 1996, the motion was denied as Defendant had no right to transcripts for the purpose of searching for possible error. Doc. 55.

On April 24, 1996, the Antiterrorism and Effective Death Penalty Act (AEDPA) was signed into law and took effect.  *See* Goodman v. United States, 151 F.3d 1335, 1336 and n. 1 (11th Cir. 1998).  As amended by the AEDPA, there is a one year limitations period for filing a § 2255, which runs from the latest of four dates: the date on which the judgment became final; the date on which an impediment to filing, created by unconstitutional or illegal governmental action, is removed; the date on which the right was initially recognized by the Supreme Court; or the date on which the supporting facts were discovered or could have been discovered by the exercise of due diligence.  § 2255(f)(1)-(4).[2]  Since Defendant's sentence was final before the AEDPA took effect, he had one year from that date to file a § 2255 motion, unless a later commencement date applies.  Goodman, 151 F.3d at 1337.

Nothing else was filed until January 10, 2001, when Defendant filed an 18 U.S.C. § 3582(c)(2) motion to modify sentence based on Amendment 599 to the Sentencing Guidelines.  Doc. 56.  The Government filed an opposition, doc. 57, and the motion was

---

[2] In 2008, § 2255 was amended to designate the eight (previously undesignated) paragraphs as subsections (a) through (h).

denied. Doc. 59. Defendant took an appeal. A certificate of appealability was denied

as unnecessary because the appeal was not in a § 2255 proceeding. Doc. 61. The

order was affirmed on September 19, 2002, and the mandate issued October 25, 2002.

Doc. 81; <u>United States v. White</u>, 305 F.3d 1264 (11th Cir. 2002).

While the § 3582 appeal was still pending, Defendant filed affidavits and letters

seeking dismissal of the indictment as well as a grand jury investigation into fraud

allegedly committed against him. Docs. 75, 76, 77, and 80. Defendant said he had

been advised that the court could not act on a personal letter and that he should file a §

2255 motion, but explained he was unable to do so because of the pending appeal.

Doc. 77, p. 2.[3]

After the mandate issued in the § 3582(c)(2) appeal, Defendant wrote another

letter, asking the court to overturn his conviction in the interest of justice. Doc. 84. By

order of January 13, 2003, I found the claims raised in Defendant's letters were claims

cognizable under § 2255, and advised that "[a]ny request for relief must be raised in a §

2255 motion, which must be filed on forms provided by the clerk." Doc. 85, p. 4. The

order also advised Defendant of the one year limitations period, found the various

letters moot, and directed the clerk to forward § 2255 forms to Defendant. The order

also said: "If and when Defendant files a § 2255 motion, he must also submit a

---

[3] The letter from the clerk does not appear on the docket, but an undated staff attorney letter to Defendant is attached to doc. 80. It advised that no action could be taken on a letter, and "[e]nclosed are the forms which seem most appropriate to your situation based on the contents of your letter." Doc. 80, p, 17 in ECF. The letter advised that a complaint must be accompanied by a filing fee or motion to proceed in forma pauperis, and sent to Defendant with the letter were § 2255 forms and an in forma pauperis application. *Id.* While § 2255 was and is the appropriate remedy, see doc. 85, there is no fee for filing a § 2255 motion.

statement explaining why the motion should not be summarily dismissed as untimely."
*Id.*, p. 3 (footnote 2, which explained why the court did not construe the letters as filed
pursuant to § 2255, omitted).

The next thing filed by Defendant was an undated letter to the district judge,
stamped received by the clerk on April 4, 2008. Doc. 86. The letter was treated as a
motion for jail credit and summarily denied. Docs. 87 and 88. Another letter motion
seeking jail credit was denied by order entered August 6, 2008. Docs. 89 and 90.

Defendant filed his § 2255 motion on September 30, 2009 (the date deposited in
the prison mail system). Doc. 91.

In support of his request for § 2255 relief, Defendant asserts that the prosecution
suppressed the original police report, in which the victim said the assailant was wearing
a hat or cap and a camouflage jacket. Doc. 92, p. 4, referencing Ex. A. He claims the
prosecution suppressed another police report which reflected that the suspect had black
hair and no facial hair. *Id.*, referencing Ex. B. He also claims suppression of
handwritten notes by an officer that "Jimmy Ghent looks familiar." *Id.*, pp. 4-5,
referencing Ex. C.

The exhibits to the memorandum are numbered 1-6. Doc. 92-2, pp. 1-8 in ECF
(electronic case filing). Following exhibit 6 are three pages, the third marked "Ex. A - 3
of 3," which are clearly the documents referenced in the memorandum. Doc. 92-2, pp.
9-11 in ECF. The police report narrative of November 6, 1991, was written by Officer
Bullock. Doc. 92-2, pp. 9 and 10 (which are the second and first pages, respectively, of
the report). Officer Bill Bullock wrote that he was summoned by Police Chief Nelson
Blount. *Id.*, p. 10. Blount summoned him to a car dealership where McDaniel had

driven after he was shot. *Id.* "Chief Blount talked very briefly with McDaniel before the ambulance personnel (who had also been summoned) took him away for medical attention." *Id.*, pp. 10-9, respectively. Bullock wrote down what Blount told him McDaniel said. One statement at issue is in the last paragraph:

> Blount had also told me that McDaniel had reported to him that the subject who shot McDaniel had been wearing some type of hat or cap and a camouflage jacket or shirt. No-one [sic] in the neighborhood reported seeing anyone matching that description just prior to or just after the shooting.

*Id.*, p. 9 in ECF. On the form under "Hair Color" was written "Blk," and under "Facial Hair" was written "None." *Id.*, p. 10.

Defendant claims that McDaniel committed perjury because at trial, when asked about the description he gave to Blount, McDaniel said, "I told him it was a colored guy, a black guy wearing an Army fatigue jacket," and "I told him I didn't think he was wearing no hat, he didn't have much hair, was clean shaven and everything." Doc. 92, pp. 4-5. Defendant claims the statement to Blount that the assailant wore a hat or cap was contrary to testimony that he was clean shaven and baldheaded, and McDaniel committed perjury in testifying that he had not changed his description over the course of time. *Id.*, pp. 5-6, 10 (quoting McDaniel's testimony at the suppression hearing that the person was a "clean shaven, nice looking young man, wasn't scroungy, clean shaven kind of bald, no hair on his head.").

The handwritten notations cited by Defendant are dated November 14, 1991, in Madison Florida. Doc. 92-2, p. 11 in ECF. The notes were apparently taken while talking to Defendant and reflect, "Denied shooting mailman in Monticello, FL," "Said he would take polygraph test to prove his innocence," and "Denied having army jacket." *Id.*

At the very bottom is written "Jimmy Gent – looks familiar to carrier." *Id.* A star (or asterisk) appears to the left of this sentence, which is also emphasized with underlining and large brackets on either side. Earlier copies of this document filed by Defendant were only emphasized by the star, not the large brackets or bold underlining. *See* doc. 75 (affidavit of information), Ex. E (p. 16 in ECF); doc. 77 (letter to the court), Ex. E (p. 18 in ECF); doc. 80 (affidavit of information), Ex. A (p. 16 in ECF).

Defendant claims this notation sheet was made by Inspector Miles and suppressed by the prosecution; that the statement "Jimmy Ghent looks familiar to carrier" shows that McDaniel said he saw a suspect, but then "testified in court that it never happened." Doc. 92, p. 5. Defendant quotes testimony of McDaniel that he was not asked by agents if he recognized anyone, but he told them he did and "I pointed out one guy." *Id.*, p. 11. Petitioner claims that the testimony of Ronald James was that he saw a male and female standing by the truck at the time of shots were fired, contrary to McDaniel's testimony that he saw no one else there. *Id.*, pp. 11-12.

Defendant does not address the time bar specifically, but claims that the basis for relief "involves new evidence," and "whether by way of a Section 2255 or actual innocence vehicle, this court does possess jurisdiction to render a decision on the merits of White's meritorious claims." Doc. 92, p. 4. He later notes "it should be remembered that time barred cases can be revived by the petitioner producing new, reliable evidence of actual, factual innocence, or producing evidence the prosecution suppressed evidence material to the defense. A <u>Brady</u> claim is not time barred or procedurally barred." *Id.*, p. 13, citing <u>House v. Bell</u> (discussed ahead) and <u>Brady v. Maryland</u>, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

A prisoner may assert actual innocence as a "gateway" to review of a procedurally defaulted claim, to avoid the requirement of showing cause and prejudice for a default. House v. Bell, 547 U.S. 518, 536-537, 126 S.Ct. 2064, 2076-77, 165 L.Ed.2d 1 (2006), *discussing* Schlup v. Delo, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995) (other citations omitted). The Eleventh Circuit has not yet decided whether a claim of actual innocence would excuse compliance with the one year period for filing a § 2254 petition. Arthur v. Allen, 452 F.3d 1234, 1244 (11th Cir. (11th Cir. 2006),[4] *citing* Wyzykowski v. Dept. of Corrections, 226 F.3d 1213 (11th Cir. 2000) (other citations omitted).[5] The court should not decide this legal issue until presented with a sufficient showing of actual innocence. 452 F.3d at 1244; 226 F.3d 1218-19.[6]

---

[4] The opinion was modified, not in relevant part, on rehearing. Arthur v. Allen, 459 F.3d 1310 (11th Cir. 2006) (replacing the discussion regarding entitlement to a hearing and discovery).

[5] The precise legal issue stated in Wyzkowski is whether, "[w]here the petitioner can show actual innocence and § 2244(d)'s limitation period has expired, does the bar to filing a first federal petition constitute an unconstitutional suspension of the writ of habeas corpus?" 226 F.3d at 1218.

[6] Compare Escamilla v. Jungwirth, 426 F.3d 868, 871 (7th Cir. 2005) ("actual innocence is unrelated to the statutory timeliness rules."); Flanders v. Graves, 299 F.3d 974, 977-978 (8th Cir. 2002) ("[t]he statute fixes a one-year period of limitations, and says nothing about actual innocence, even though other parts of AEDPA, enacted at the same time, do refer to this doctrine. It is not our place to engraft an additional judge-made exception onto congressional language that is clear on its face;" for actual innocence to warrant equitable tolling, "a petitioner would have to show some action or inaction on the part of the respondent that prevented him from discovering the relevant facts in a timely fashion, or, at the very least, that a reasonably diligent petitioner could not have discovered these facts in time to file a petition within the period of limitations.") (citations omitted); Souter v. Jones, 395 F.3d 577, 600-602 and nn. 15 and 16 (6th Cir. 2005) (equitable tolling based on a credible showing of actual innocence would be warranted, rejecting additional showing suggested in Flanders that some act or omission of Respondent prevented discovery of facts or the facts could not have been discovered with due diligence). *See also* Felder v. Johnson, 204 F.3d 168, 171 and n.

To demonstrate actual innocence in the gateway context, the prisoner "must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.' " House, 547 U.S. at 536-537, 126 S.Ct. at 2076-77, *quoting* Schlup.  Although there must be "new reliable evidence" not presented at trial, the district court considers "'all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial."  547 U.S. at 538, 126 S.Ct. at 2077 (internal quotations omitted) (quoting Schlup, other citation omitted).

The "new evidence" produced by Defendant consists of a police report by Bullock, in which he wrote that Blount told him that McDaniel said the shooter was wearing "some type of hat or cap," and in which "blk" was indicated in the space for hair color.  Defendant contends the report is inconsistent with McDaniel's testimony that the person wore no hat and his head was shaved or bald.  The investigator's notes that the carrier recognized Jimmy Ghent, Defendant claims, was inconsistent with his testimony that he picked only one person from the line up.

Bullock was writing down what Blount said McDaniel had told him.  That Bullock wrote something different than what McDaniel testified to in describing what the assailant wore on his head does not show Petitioner was actually innocent.  *See* United States v. Bailey, 123 F.3d 1381, 1395 (11th Cir. 1997) (citation omitted).  A memory lapse, unintentional error, or oversight is not perjury.  *Id.*, at 1395-96, *citing* United

_____

8 (5th Cir. 2000) (actual innocence claim was not "rare and exceptional" circumstance for equitable tolling purposes, "given that many prisoners maintain they are innocent," and he "has not made a *showing* of actual innocence.") (emphasis in original).

States v. Payne, 940 F.2d 286, 291 (8th Cir. 1991) ("it is not enough that the testimony is challenged by another witness or is inconsistent with prior statements, and not every contradiction in fact or argument is material," citation omitted). More important than what Blount told Bullock that McDaniel had said (at the time of Bullock's report McDaniel had just suffered a gunshot wound), McDaniel described his assailant to an artist who created a composite drawing. Officers believed Defendant looked like the person in the composite drawing, and the defense knew about the composite drawing. Had there been material differences in McDaniel's description of his assailant as rendered there and the Defendant, the differences would have been readily apparent to the defense.

That McDaniel said the shooter was "didn't have much hair" and was clean shaven is not proven false either by Bullock's statement that McDaniel said he had a hat or cap, or by marking hair color on the form. Defendant was described as a young black male, and even if shaved or wearing a hat, it was not unreasonable to assume his hair color, whatever amount, was black.

The notation that Ghent was recognized "by carrier" is not exculpatory, and certainly does not establish innocence. Assuming the "carrier" was McDaniel, there is no showing that Ghent was one of the people in the line-up. Nor is there any indication of the significance of the recognition. That someone is recognized by another could mean he looks vaguely familiar, or is well known to the other person. It is a leap of logic to assume from this cryptic notation that Ghent was in the-line up, and that McDaniel did not merely recognize him but recognized him *as his assailant.* Further, even if McDaniel thought he recognized someone else as assailant before he identified Defendant (which has not been shown), this is a far cry from showing that Defendant is

actually, factually innocent of the offense. Moreover, there was evidence that Defendant admitted that he shot McDaniel to another prisoner.

Finally, whether Defendant claims new evidence of actual innocence or new evidence under § 2255(f)(4) (commencing the one year from the date supporting facts could have been discovered with due diligence), there is nothing even remotely "new" about these claims, the evidence, or Defendant's assertion of actual innocence. *See* docs. 75 (pp. 2, 4, 8, 9, 11, 16, 35, 43, 44, and 59 in ECF), 76 (pp. 6-8, 10-12, 14, 27, and 31 in ECF), 77 (pp. 1, 2, 4, 6, 10, 11, 13, and 18 in ECF), 80 (pp. 1, 2, 7-9, 15, 16, 22, 39, 41). The referenced documents all preceded my order explaining to Defendant that he had to proceed under § 2255, directing the clerk to provide § 2255 forms, *and* advising Defendant of the one year limitations period for filing. It appeared at that time that Defendant's one year had already expired, and that order was entered on January 13, *2003*. Defendant did not file his § 2255 motion until September 30, *2009*, well over six and one half years after that. He has shown no diligence at all.

It is therefore respectfully **RECOMMENDED** that the § 2255 motion to vacate sentence filed by Thomas D. White be **SUMMARILY DISMISSED** as untimely filed.

**IN CHAMBERS** at Tallahassee, Florida, on November 10, 2009.


s/     William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**